SUN SAVINGS AND LOAN ASSOCIA-
TION, a corporation,
Plaintiff-Appellant,

v.

Daniel W. DIERDORFF; Mary Dier-
dorff, Defendants-Appellees.

No. 86–5811.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1987.

Decided Aug. 7, 1987.

David E. Lundin, Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, San Diego, Cal., for plaintiff-appellant.

Virginia R. Gilson, San Diego, Cal., for defendants-appellees.

Before PREGERSON and NORRIS, Circuit Judges, and BURNS,[*] District Judge.

PREGERSON, Circuit Judge:

Appellant Sun Savings & Loan Association ("Sun") brought an action against appellee Daniel Dierdorff ("Dierdorff"), Sun's former president, alleging that Dierdorff violated the federal Racketeering Influenced and Corrupt Organizations Act ("RICO").[1] The alleged racketeering activity consisted of four letters written by Dierdorff to various entities. In the letters, Dierdorff allegedly sought to cover up

---

[*] Hon. James M. Burns, United States District Judge, District of Oregon, sitting by designation.

1. Sun's only other basis for federal jurisdiction was the alleged violation of Federal Home Loan Bank Board ("FHLBB") regulations. The district court found no violation of the regulations, and Sun does not appeal from the district court's ruling on this issue. The action also raised numerous pendent state claims against appellee Daniel Dierdorff and against Mary Dierdorff. Because the district court dismissed the action for lack of federal subject matter jurisdiction based on the failure of the RICO and FHLBB claims, the court also dismissed the pendent state claims. Dismissal of the state claims was proper under *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Because we hold that the RICO claims should not have been dismissed for lack of federal subject matter jurisdiction, the district court on remand should reexamine its ruling with respect to the exercise of pendent jurisdiction over the state claims. *See Hirst v. Gertzen*, 676 F.2d 1252, 1265 (9th Cir.1982).

a scheme in which he received kickbacks from Sun's loan customers. Dierdorff moved to dismiss for lack of subject matter jurisdiction, arguing that Sun's RICO claims were invalid. The district court dismissed the complaint without leave to amend. Sun appeals that ruling. We reverse on the ground that the complaint adequately alleges a RICO cause of action.

## I. BACKGROUND

Dierdorff served as Sun's president and chief executive officer from June 1980 until October 1984. Sun asserts that during his tenure Dierdorff solicited and received kickbacks from Sun's customers for whom he approved large loans. On February 3, 1983, Dierdorff allegedly created a secret checking account at Sun under the fictitious name of "Dan Danzer." Between February 3, 1983, and March 15, 1984, Dierdorff allegedly made cash deposits of $209,324 into the Danzer account. Sun avers that the money Dierdorff deposited was the money he received through the fraudulent kickback scheme.

Sun bases its RICO claim on four predicate acts of mail fraud. Dierdorff allegedly sent letters to certain state and federal agencies and to Sun's outside auditor. In these letters, Dierdorff allegedly attempted to conceal his wrongdoings from the letters' recipients and from Sun. Specifically Sun alleges:

1. On or about April 30, 1984, Dierdorff caused a letter to be produced and mailed by Sun's Assistant Operations Administrator to the Internal Revenue Service. The letter falsely represented that Dierdorff properly provided a tax identification number for the Danzer account.

2. On or about September 26, 1984, Dierdorff caused letters to be produced and mailed to both the Federal Home Loan Bank Board and the California Savings and Loan Commissioner. These letters represented that Dierdorff had done nothing "improper or illegal."

3. On or about June 15, 1984, Dierdorff caused a letter to be produced and mailed to Arthur Young Company, outside auditors for Sun. The letter represented that proper loan committee approval was not obtained for loans in "some instances" and blamed this failure on "irregular committee meetings and not enough members on the committee."

4. On or about June 20, 1984, Dierdorff caused a letter to be produced and mailed by Sun's Vice President/Financial Manager to the California Department of Savings and Loan. The letter transmitted a copy of the June 15 letter to Arthur Young Company and thereby represented to the Department of Savings and Loan that proper loan committee approval was not obtained in some instances and that this failure was due to irregular committee meetings and an insufficient number of committee members.

Dierdorff resigned from his position with Sun effective October 22, 1984. As part of the termination agreement, Sun agreed not to bring any action against Dierdorff arising out of the employment agreement after October 21, 1985.

Sun filed this action on October 21, 1985. On December 6, 1985, Sun filed an amended complaint that added additional parties. On January 8, 1986, Dierdorff filed a motion to dismiss. The district court granted the motion and dismissed the action without leave to amend on the ground that no federal claim had been stated and that federal subject matter jurisdiction was therefore lacking.

The district court found plaintiff's RICO allegations insufficient on two grounds. First, the court held that plaintiff failed to allege a "pattern of racketeering activity." Second, the court held that the predicate acts were not conducted by an "enterprise." Sun appeals both of these rulings and, in the alternative, argues that even if the district court was correct in dismissing the complaint, it should have allowed Sun leave to amend. Dierdorff argues on appeal that the district court's rulings on the pattern and enterprise issues were correct and that, in any case, the complaint failed to allege the predicate acts of mail fraud.

## II. DISCUSSION

We review a district court's dismissal of a complaint *de novo. Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). A complaint should not be dismissed for failure to state a cause of action "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). All allegations of the complaint should be construed favorably to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90; *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979).

### A. Rico Generally

RICO, at 18 U.S.C. § 1962(c), provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, *to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity* or collection of unlawful debt. (Emphasis added.)

The Supreme Court has stated that "RICO is to be read broadly." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985). Liability under § 1962(c) requires (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Id.* at 3285. "Racketeering activity" is any act indictable under several provisions of Title 18 of the United States Code, *see* 18 U.S.C. § 1961, and includes the predicate act alleged in this case of mail fraud under 18 U.S.C. § 1341.

### B. Pattern of Racketeering Activity

In *Sedima,* 105 S.Ct. 3275, the Supreme Court in a footnote explored the contours of RICO's "pattern" requirement:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5)(emphasis added), not that it *"means"* two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.,* at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender."); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States,* 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).

*Sedima,* 105 S.Ct. 3275, 3285 n. 14.[2]

Footnote 14 in *Sedima* has generated a plethora of differing views. Focusing on

---

2. Although footnote 14 contains no explicit reference to section 1962(c), the Court provided

the Court's use of the "continuity plus relationship" language from S.Rep. No. 91–617, *see Sedima*, 105 S.Ct. at 3285 n. 14, various circuit and district courts have arrived at significantly different analyses of when a pattern does and does not exist. *See, e.g., Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986) (predicate acts must constitute "separate transactions" to form pattern); *Superior Oil Co. v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986) (where all predicate acts were committed in furtherance of single scheme, pattern requirement is not met); *Bank of America Nat'l Trust & Sav. Ass'n v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986) (rejecting requirement of more than one criminal scheme for pattern requirement); *R.A. G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1355 (5th Cir.1985) (one criminal scheme is sufficient for pattern requirement); *Volckmann v. Edwards*, 642 F.Supp. 109, 111–14 (N.D.Cal.1986) (predicate acts occurring during one criminal scheme constitute pattern); *Northern Trust Bank/O'Hare v. Inryco, Inc.*, 615 F.Supp. 828, 833 (N.D.Ill. 1985) (no pattern when predicate acts furthered one criminal scheme).

It is important to recognize that in footnote 14 the Supreme Court does not enshrine "continuity plus relationship" as a determinative two-pronged test. Rather, the Court quotes this language to demonstrate how the pattern requirement should be interpreted to prevent the application of RICO to the perpetrators of "isolated" or "sporadic" criminal acts. *See* Note, *Reconsideration of Pattern in Civil RICO Offenses*, 62 Notre Dame L.Rev. 83, 96 (1986).

By citing language from 18 U.S.C. § 3575(e) [3] in the penultimate sentence of footnote 14, the Court suggests that for purposes of 18 U.S.C. § 1962(c), a relationship exists among acts that have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics...." *Sedima*, 105 S.Ct. at 3285 n. 14.

▪ The case at hand easily satisfies section 3275(e)'s definition of relationship, as well as a common sense understanding of the term. Dierdorff's alleged predicate acts of mail fraud were designed to further his scheme of receiving and using kickbacks. The letters were all part of a scheme that victimized Sun and enriched Dierdorff. Thus, a relationship exists among the alleged predicate acts of mail fraud in the present case.

In many RICO cases involving the pattern issue, it is the continuity requirement that raises a substantial question. *See, e.g., Morgan v. Bank of Waukegan*, 804 F.2d at 975; *Superior Oil Co. v. Fulmer*, 785 F.2d at 257. Such is the case here. Dierdorff allegedly committed four predicate acts in connection with his ongoing scheme of receiving kickbacks and other favors from loan customers. The critical question is whether these four acts of mail fraud, all relating to Dierdorff's underlying kickback scheme, satisfy *Sedima*'s continuity requirement.

The post-*Sedima* courts that have considered this issue have taken two positions. One group of courts, including the Eighth Circuit, has held that a series of predicate acts related to one fraudulent scheme or criminal episode does *not* constitute a pattern. *See, e.g., Fulmer*, 785 F.2d at 257. Another group, including the Seventh and Eleventh Circuits, has held that a series of predicate acts related to one fraudulent scheme or criminal episode can constitute a pattern, so long as the predicate acts are "continuous." *See, e.g., Bank of America v. Touche Ross*, 782 F.2d at 971; *Illinois Dep't of Revenue v. Phillips*, 771 F.2d 312, 313 (7th Cir.1985).

---

footnote 14 to clarify the pattern requirement of that section. *See Sedima*, 105 S.Ct. at 3285.

**3.** 18 U.S.C. § 3575 provides for an increased sentence for dangerous special offenders. Special offenders include persons who participate in a pattern of criminal conduct. 18 U.S.C. § 3575(e)(2) and (3). The statute states: "For purposes of paragraphs (2) and (3) of this sub- section, criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e).

■ We agree with the Seventh and Eleventh Circuits that it is not necessary to show more than one fraudulent scheme or criminal episode to establish a pattern under *Sedima*. *See California Architectural Bldg Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir.1987). As stated in *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir.1986), continuity exists if the predicate acts are not isolated, i.e., if the predicate acts posed a threat of continuing activity. *Accord California Architectural*, At 1469.

We see no sound basis for the view taken by some courts that a pattern requires more than one "fraudulent scheme" or "criminal episode." *See, e.g., Fulmer*, 785 F.2d at 257; *Medallion TV Enterprises v. SelecTV, Inc.*, 627 F.Supp. 1290, 1297 (C.D. Cal. 1986); *Northwest Trust Bank/O'Hare v. Inryco, Inc.*, 615 F.Supp. 828, 832 (N.D. Ill.1985). The explanation these courts offer for the requirement of more than one criminal scheme or episode is that the word "pattern"

> connotes a multiplicity of events: Surely the continuity inherent in the term presumes repeated criminal *activity*, not merely repeated *acts* to carry out the *same* criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity."

*Inryco*, 615 F.Supp. at 831 (emphasis in original).

As another court has stated,

> a "pattern" of racketeering must include racketeering acts sufficiently unconnected in time and substance to warrant consideration as separate criminal episodes. The key to demonstrating a "pattern" is not merely the number of predicate acts, or the time span in which they occur, *see*

*Inryco*, 615 F.Supp. at 833, but also whether they related to *separate* criminal episodes.

*Medallion TV*, 627 F.Supp. at 1297 (emphasis in original).

We are hard put to understand the significance of the semantical distinction embodied in the *Inryco* district court's pronouncement that RICO requires repeated criminal activity rather than repeated criminal acts. The statement overlooks the clear language of section 1961 stating that a pattern "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). RICO requires repeated *acts*, not repeated *activity*. Thus, if a defendant commits two or more predicate acts that are not isolated events, are separate in time, and are in furtherance of a single criminal scheme, then RICO's pattern requirement is satisfied.

*Medallion TV*'s concept of continuity as involving acts that are "sufficiently unconnected in time and substance to warrant consideration as separate criminal episodes," 627 F.Supp. at 1297, arguably places the continuity requirement into direct tension with the relationship requirement. *See Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986). Under the *Inryco/Medallion TV* standard, to meet the pattern requirement, a plaintiff must somehow show that predicate acts were both "related" and "sufficiently unconnected" in time and substance. Requiring temporal unconnectedness, i.e., separate acts, makes sense, but neither RICO's language nor *Sedima*'s interpretation of it supports a requirement of substantive unconnectedness, i.e., separate episodes or schemes.[4]

The continuity requirement set forth in *Sedima* is aimed only at eliminating RICO actions against perpetrators of isolated or sporadic acts and is not an attempt to limit RICO to complicated systems or multiple

---

4. *Medallion TV's* requirement of separate criminal episodes is not necessarily inconsistent with this court's holding on the pattern issue. If an episode is considered to be a single act, event, or transaction, then *Medallion TV's* requirement of more than one episode squares with our interpretation of the continuity requirement. However, one could read *Medallion TV* to include within its concept of episode a *series* of acts, events, or transactions, so long as those acts, events, or transactions are substantively related. Such a reading unreasonably limits the ambit of RICO and overlooks the Supreme Court's admonition that RICO be broadly read. *See Sedima*, 105 S.Ct. at 3286.

schemes of criminal activity. Requiring a showing of a delicate equilibrium between relatedness and unconnectedness, while arguably in accord with the Supreme Court's statement that sporadic or isolated acts should be protected from RICO claims, will forestall RICO claims that are legitimate under the RICO Act itself, its legislative history, and the Supreme Court's interpretation of the Act. Although RICO cases may be pesky, courts should not erect artificial barriers—metaphysical or otherwise—as a means of keeping RICO cases off the federal dockets. *See Sedima*, 105 S.Ct. at 3287.

Rather than employing a circuitous method of eliminating isolated or sporadic acts from RICO's purview, we prefer simply to examine the predicate acts to see whether they are in fact isolated or sporadic. If the acts are not isolated or sporadic, then the racketeering activity is continuous. As indicated in *Schreiber*, 806 F.2d at 1393, the test for establishing whether acts are isolated is whether the acts posed a threat of continuing activity.

■ In the case before us, the continuity requirement is satisfied. Dierdorff's predicate acts could be said to be part of a single scheme, the scheme whereby Dierdorff received numerous kickbacks and concealed the practice from his employer. Even though a single scheme was involved, the predicate acts constituting the racketeering activity were continuous. They occurred separately over time, and they are not isolated or sporadic events because they posed a threat of continuing activity.

The meaning of "threat of continuing activity" can best be understood through a comparison of the facts of the case at hand and those of *Schreiber*, 806 F.2d at 1393. The two predicate acts in *Schreiber* did not pose a threat of continuing activity because

they furthered the diversion of a single shipment of goods and appear to have occurred at nearly the same time, and because once those acts were complete, defendant had no further need to commit predicate acts. The four predicate acts in this case did pose a threat of continuing activity because they covered up a whole series of alleged kickbacks and receipts of favors, occurred over several months, and in no way completed the criminal scheme.[5]

Because Dierdorff's four alleged predicate acts of mail fraud were related and continuous, we hold that Sun's complaint satisfies the pattern requirement as established in *Sedima*.

## C. Conduct of an Enterprise

■ To state a cause of action under 18 U.S.C. § 1962(c), Sun must allege that Dierdorff conducted or participated "directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c). The enterprise that Sun has alleged in its complaint is Sun itself.[6]

The district court found that because "the alleged mailings were not the conduct of the bank's affairs, but were instead conduct of Dierdorff's affairs," the RICO claim was deficient in alleging the conduct of an enterprise. This conclusion misinterprets section 1962(c).

■ RICO does not require that the alleged racketeering conduct *be* the conduct of the alleged enterprise. Instead, RICO requires that the defendant directly or indirectly conduct or participate in the enterprise's affairs through a pattern of racketeering activity. Thus, rather than requiring that the enterprise itself conduct the racketeering activity, RICO simply requires a "nexus" between the enterprise and the racketeering activity. As the Supreme

---

**5.** The fact that the last of a series of predicate acts may have completed the criminal scheme does not necessarily preclude a finding of continuity. As long as a threat of continuing activity exists at some point during the racketeering activity, the continuity requirement is satisfied.

**6.** Sun, as the enterprise for purposes of section 1962(c), is also the plaintiff in this action. The

enterprise here is a proper plaintiff because 18 U.S.C. § 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor." 18 U.S.C. § 1961(3) defines "person" to include "any individual or entity capable of holding a legal or beneficial interest in property." Hence, Sun is a proper plaintiff.

Court stated in *Sedima,* the essence of a violation of section 1962(c) "is the commission of those acts [of racketeering] *in connection with* the conduct of an enterprise." *Sedima,* 105 S.Ct. 3286 (emphasis added).

This "connection" or "nexus" requirement entails a relationship between the enterprise and the racketeering activity. This does not require some benefit to accrue to the enterprise because of the racketeering activity. One of the principal purposes of RICO was to "deal with the infiltration of legitimate businesses by organized crime." *United States v. Turkette,* 452 U.S. 576, 593, 101 S.Ct. 2524, 2534, 69 L.Ed.2d 246 (1981). A fundamental premise of a program designed to curtail racketeering is that racketeering can harm rather than benefit legitimate businesses. *See, e.g.,* 115 Cong.Rec. 827 (1969) (remarks of Sen. McClellan) ("Organized crime . . . uses its ill-gotten gains . . . to infiltrate and secure control of legitimate business and labor union activities."); 116 Cong.Rec. 35193 (1970) (remarks of Rep. Poff) ("[T]itle IX . . . will deal not only with individuals, but also with the economic base through which those individuals constitute such a serious threat to the economic well-being of the Nation.") Thus, to satisfy the nexus requirement, plaintiff must merely allege some relationship between the racketeering activity and Sun.

Under this "connection" or "nexus" requirement, the racketeering activity must in some way stem from the enterprise's activities or otherwise have some relationship to the enterprise. As stated by the Second Circuit in *United States v. Scotto,* 641 F.2d 47 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981), a nexus exists "when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise." *Id.* at 54. In the present case, the connection requirement is satisfied if Dierdorff was able to commit the fraud by virtue of his position with or work for Sun or if the fraud was related to Sun's business.

■ Sun's complaint alleges the required nexus. When he committed the alleged predicate acts of mail fraud, Dierdorff acted in his capacity as Sun's president. The acts of mail fraud were all related to the activities of Sun. Therefore, the complaint adequately alleges that Dierdorff conducted or participated in the conduct of Sun's affairs through a pattern of racketeering activity.

### D. Mail Fraud

Appellee contends that appellant's RICO allegations are deficient because they fail successfully to allege the predicate acts of mail fraud. According to appellee, the ten fraud allegations in the complaint were not pled with sufficient particularity, pled no fraud or deceit, or were unrelated to Dierdorff's mailings.

■ The mail fraud statute, 18 U.S.C. § 1341, imposes criminal liability upon anyone who devises "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises," and uses the United States mails "for the purpose of executing such scheme or artifice or attempting so to do." To allege a violation of the mail fraud statute, plaintiff must show that (1) defendant devised a scheme or artifice to defraud, (2) defendant used the mails in furtherance of the scheme; and (3) defendant did so with the specific intent to deceive or defraud. *Schreiber,* 806 F.2d at 1399, 1400.

■ Sun's complaint fulfills these criteria. The complaint alleges that Dierdorff devised a scheme to defraud Sun by receiving kickbacks and by making various misrepresentations. The complaint sets forth four uses of the mails that are allegedly in furtherance of Dierdorff's fraudulent scheme. Thus, the first two elements are properly alleged.

Nowhere in its complaint does Sun allege that Dierdorff harbored a specific intent to deceive or defraud. We have held, however, that this allegation need not be made expressly. The requirement of specific in-

tent under the mail fraud statute is satisfied by "the existence of a scheme which was 'reasonably calculated to deceive persons of ordinary prudence and comprehension' and this intention is shown by examining the scheme itself." *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir.1984), *cert. denied*, 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985), quoting *United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980); *see also Schreiber*, 806 F.2d at 1400. Under this standard, Sun's complaint has sufficiently alleged the specific intent necessary for mail fraud. The scheme in which Dierdorff allegedly was engaged, involving quiet kickbacks, secret bank accounts, and cover-up letters, seems designed to deceive or defraud. While the complaint falls short of expressly alleging the requisite specific intent, the complaint clearly conveys by implication that Dierdorff intended to deceive or defraud.

■ Dierdorff is also incorrect in his contention that several of Sun's allegations fail to set forth fraud with the required particularity and that several other allegations are conclusory. Federal Rule of Civil Procedure 9(b) requires that "all averments of fraud ... be stated with particularity." The time, place, and manner of each act of fraud must be alleged so as to enable the defendant to prepare an adequate answer. *Bosse v. Crowell Collier & MacMillan*, 565 F.2d 602, 611 (9th Cir.1977); *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir.1973). Sun's complaint describes the dates on which the letters were written, by whom and to whom the letters were sent, the letters' content, and the letters' role in the fraudulent scheme. Because this information enables Dierdorff to file a meaningful answer, Sun's allegations of mail fraud are sufficiently specific to satisfy Rule 9(b).

Appellee incorrectly argues that even if Sun had adequately pled a "scheme to defraud," the mail fraud allegations are inadequate because they do not allege that the mailings were in furtherance of the scheme to defraud. Title 18 U.S.C. § 1341 requires that the mailings alleged in a mail fraud complaint have been made for the purpose of executing the fraudulent scheme. *United States v. Mitchell*, 744 F.2d 701, 703 (9th Cir.1984). This does not mean that the mailings need be an essential part of the scheme. *Id.* Likewise, this does not mean that the mailings need occur concurrently with the fraudulent acts. *United States v. Sampson*, 371 U.S. 75, 80, 83 S.Ct. 173, 175, 9 L.Ed.2d 136 (1962); *see Mitchell*, 744 F.2d at 703. The requirement that the mailings be "in furtherance" of the scheme "is satisfied if the completion of the scheme or the prevention of its detection is in some way dependent upon the mailings." *Id.*

■ The complaint adequately alleges that Dierdorff's mailings were in furtherance of the fraudulent scheme. All four mailings apparently were part of Dierdorff's attempts to evade detection so that he could continue in his alleged practice of accepting kickbacks. While the letters were all sent to third parties rather than to Sun, the effect of the mailings was to prevent the development of any suspicion about the Danzer account and thus keep Sun ignorant of Dierdorff's activities. Thus, the mailings as alleged were in furtherance of Dierdorff's alleged scheme to defraud. We therefore reject appellee's argument that the district court's dismissal is justified by appellant's failure properly to allege mail fraud.

We hold that the complaint adequately alleges a pattern of racketeering activity, the required nexus between the enterprise and the racketeering activity, and the predicate acts of mail fraud. Therefore, we REVERSE the district court's dismissal of the case and REMAND for further proceedings consistent with this opinion.

JAMES M. BURNS, District Judge, concurring in the result.

I concur in the result, but only for the following reasons.

In this RICO case, my panel colleagues have made thorough and conscientious efforts. RICO is for me (and many, if not most, of my district court colleagues) an agonizingly difficult and confusing area of

the law. Only with the greatest reluctance do I concur in the result here. My less than enthusiastic support stems from a general resistance to further the extension of civil RICO.

This case illustrates that extension through the continued federalization of state common law remedies. Dierdorff's alleged kickback scheme simply amounted to fraud until it began to be exposed, as it unraveled. Dierdorff (in whose head, presumably, there were dancing visions of profits from his alleged shabby scheme, rather than visions of the arcane nuances of RICO) provided Sun with colorable grounds for RICO's civil treble damages by sending four letters in which he sought to deny his wrongdoing to entities other than Sun. Thus Dierdorff's predicate acts, arguably committed after the fact and certainly not essential to the scheme, provide the bridge between common law fraud and RICO.

Unfortunately, the amorphous nature of the RICO act and its ill-defined terminology ("pattern" etc.) found therein, leave this court with minimal means of restraint. *Sedima*[1] leaves lower courts with almost no choice. Post-*Sedima* opinions in general, end up extending, rather than restricting RICO's reach. Until congress circumscribes the legislation with somewhat more preciseness, RICO's extension will probably continue. Thus I share the sentiments expressed by Judge Kennedy in his concurrence in *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 at 1402 (9th Cir.1986).

1. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).