**Samuel WEGBREIT, et al., Plaintiffs,**

**v.**

**MARLEY ORCHARDS CORPORATION, et al., Defendants.**

**No. CS–91–191–FVS.**

United States District Court,
E.D. Washington.

Nov. 25, 1991.

958

## ORDER OF DISMISSAL

VAN SICKLE, District Judge.

BEFORE THE COURT are three separate motions[1] to dismiss the First Amended Complaint (hereinafter "Complaint"). As explained below, all five claims[2] in the Complaint are *dismissed.*

### A. BACKGROUND

Marley Orchards Income Fund I Limited Partnership (hereinafter "MOIF") was organized to acquire, expand, and operate apple orchards in the Yakima Valley of Washington. (Complaint ¶ 17.) Its two general partners are Marley Orchards Corporation (hereinafter "Marley Orchards")

and William Gammie. (Complaint ¶¶ 4, 7, and 8.)

During 1985, the general partners raised $15.7 million by selling limited partnerships in MOIF to investors by means of a public securities offering. (Complaint ¶¶ 4, 5, and 8.) Investors purchased limited partnerships in MOIF through Shearson Lehman Brothers, Inc. (hereinafter "Shearson"), which acted as "Dealer Manager" for the securities offering. In that capacity, Shearson prepared a Prospectus and promotional materials which were distributed to individuals who expressed interest in investing in MOIF's plan to develop apple orchards. (Complaint ¶¶ 9 and 16.)

The documents which were provided to prospective investors contained the general partners' forecast of the project's most probable financial results. According to the plaintiffs, investors were advised that the general partners' financial forecast had been reviewed by Deloitte Haskins & Sells[3] (hereinafter "Deloitte"), and that Deloitte concluded the forecast had a reasonable basis in fact. (Complaint ¶ 28.)

The partnership did not achieve the degree of success which the general partners had predicted. As a result, several hundred investors filed an action in Cook County, Illinois, on February 13, 1991, naming Marley Orchards, William Gammie, and Shearson as defendants. The plaintiffs alleged that the defendants misrepresented the degree of risk inherent in the project, and the return which could reasonably be expected from investment. (Ct.Rec. 1–1, Ex. A.)

A little over a month later, MOIF filed a petition under Chapter 11 of the Bankruptcy Code. Consequently, an automatic stay is now in effect. (Declaration of R. Bruce

---

**1.** (1) Motion By Marley Orchards Corporation To Dismiss First Amended Complaint (Ct.Rec. 29); (2) Motion By Deloitte & Touche To Dismiss The Complaint (Ct.Rec. 32); and (3) Shearson's Motion To Dismiss The First Amended Complaint (Ct.Rec. 35). William Gammie neither moved the Court to dismiss, nor joined in any of the other motions to dismiss.

**2.** Count I of the Complaint alleges violations of Section 10(b) of the Securities Exchange Act of

1934 and Rule 10b–5 of the Securities and Exchange Commission. Count II alleges common-law fraud. Count III alleges a breach of fiduciary duty. Count IV alleges negligence. Count V alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.

**3.** Deloitte Haskins & Sells has since become Deloitte & Touche.

Johnston of September 26, 1991 (Ct.Rec. 50).)

During the same period, this action was removed to Federal Court by Marley Orchards and William Gammie. (Ct.Rec. 1–1.) It was at that point that the plaintiffs filed the First Amended Complaint, adding Deloitte as an additional defendant. (Ct.Rec. 10.) The matter was transferred to the Eastern District of Washington by stipulated order entered on April 22, 1991. (Ct. Rec. 11.)

## B. SECURITIES FRAUD

■ Defendants move to dismiss the securities fraud claim, arguing it is barred by the statute of limitations. In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* ── U.S. ──, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991), the Supreme Court ruled, "Litigation instituted pursuant to § 10(b) and Rule 10b–5 ... must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." Although the new rule was applied to the parties in the action, the *Lampf* opinion does not say whether it should be applied retroactively to all pending § 10(b) actions. However, every circuit which has considered the question has held that the one-year/three-year limitation must be so applied. *Anixter v. Home–Stake Production Co.,* 947 F.2d 897, 898 (10th Cir.1991); *Welch v. Cadre Capital,* 946 F.2d 185, 186 (2nd Cir.1991); *Boudreau v. Deloitte, Haskins & Sells,* 942 F.2d 497, 498 (8th Cir. 1991). As authority, they cite *James B. Beam Distilling Co. v. Georgia,* ── U.S. ──, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), a case which was decided the same day as *Lampf.* In *Beam,* the Supreme Court held it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so. 111 S.Ct. at 2446. It went on to say, "[W]hen the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." 111 S.Ct. at 2448.

The Court agrees that the rule announced in *Lampf* must be applied retroactively. The question, then, is whether the plaintiffs' securities claim was filed before the deadline.

The plaintiffs have alleged that the acts upon which Count I is based occurred during "the summer and fall of 1985." This lawsuit was commenced in 1991. Consequently, the claim set forth in Count I is barred by the statute of limitations, and must be dismissed with prejudice.

## C. RICO

Count V alleges William Gammie violated 18 U.S.C. § 1962(a), which prohibits "any person" from using income, which is derived "from a pattern of racketeering activity," to acquire an interest in, or to operate, an enterprise engaged in interstate commerce. Count V also alleges that all of the defendants violated subsections (c) and (d) of 18 U.S.C. § 1962. Subsection (c) prohibits "any person" from conducting, or participating in, the affairs of an enterprise engaged in interstate commerce "through a pattern of racketeering activity." Subsection (d) prohibits a conspiracy to violate subsections (a), (b), or (c) of § 1962. *See H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 232, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989).

There are four elements which are common to all civil RICO actions: (1) the existence of a RICO "enterprise"; (2) the existence of a "pattern of racketeering activity"; (3) a nexus between the defendants and either the pattern of racketeering activity or the RICO "enterprise"; and (4) an injury to a plaintiff's business or property which occurs as a result. *Occupational–Urgent Care H. Sys. v. Sutro & Co.,* 711 F.Supp. 1016, 1021 (E.D.Cal.1989) (citations omitted). Of particular importance to the resolution of the motions pending before the Court is the third element—which is the requirement that plaintiffs prove a pattern of racketeering activity. According to 18 U.S.C. § 1961(5), "a 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chap-

ter [October 15, 1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." Here, Plaintiffs allege the predicate acts consist of securities fraud,[4] mail fraud,[5] and wire fraud.[6]

The defendants move for dismissal of Count V for two reasons. First, they argue the fraud claims have not been alleged with sufficient particularity to satisfy the requirements of Fed.R.Civ.P. 9(b). Second, they contend Count V fails to state a claim for which relief may be granted because the plaintiffs cannot prove a "pattern of racketeering."

### 1. Rule 9(b)

■ Rule 9(b)[7] applies to RICO claims, requiring the pleader to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir.1989) (citing *Schreiber Distrib. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986)).

Whether a complaint which alleges fraud satisfies the requirements of Rule 9(b) must be determined from the allegations set forth in that complaint. Nonetheless, it is worthwhile to review recent cases in which the Ninth Circuit Court of Appeals has applied the requirements of Rule 9(b). In *Schreiber Distrib. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986), the plaintiff's allegation of fraud was contained in paragraph 30 of the complaint:

"[T]he Defendants ... have engaged in racketeering activity ... by engaging on two or more occasions the use of the United States mail and/or use of interstate telephone calls for the purpose of executing or attempting to execute the aforesaid fraudulent scheme all of which

are indictable under the provisions of Title 18, United States Code,...."

However, the Court of Appeals noted, "The allegations describing the operative events failed to mention any use of the mails or telephones. Complaint ¶¶ 1–26." *Id.* at 1401. That led the Court to conclude, "The allegations of paragraph 30, standing alone, were not sufficiently particular to satisfy Rule 9(b)." *Id.* at 1401.

*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 533 (9th Cir.1989), involved an action by investors who lost money as a result of the purchase of limited partnerships. The investors sued not only the principals, but accountants, lawyers and stockbrokers as well. The Court of Appeals was sharply critical of the plaintiffs' proposed third amended complaint, providing a detailed list of deficiencies. *Id.* at 540. The Court then went on to observe that the complaint alleged the time and place of the wrongful conduct by saying:

"Commencing on or about October, 1982, and through and including March, 1983, within the Central District of California, and elsewhere, the defendants, and each of them, devised, intended to devise and carried out, a scheme to defraud, ...".

Such an allegation, said the Court, was insufficiently particular. *Id.* at 541.

By way of contrast, in *Wool v. Tandem Computers Inc.*, 818 F.2d at 1439–440, the Court found a complaint sufficient where allegations of misleading statements, misrepresentations, and specific acts of fraud were very precise. The Court noted, "Each alleged misstatement is identified by content, date, and the document or announcement in which it appeared. The complaint specified the exact dollar amount of each alleged overstatement, and the manner in which such representations were false and misleading." *Id.* at 1440.

4. 15 U.S.C. § 78j(b); 17 CFR § 240.10b–5.

5. 18 U.S.C. § 1341.

6. 18 U.S.C. § 1343.

7. Fed.R.Civ.P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constitut-

ing fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *See Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987).

Then, in *Sun Savings and Loan Association v. Dierdorff*, 825 F.2d 187, 196 (9th Cir.1987), the Court said, "[The plaintiff's] complaint describes the dates on which the letters were written, by whom and to whom the letters were sent, the letters' content, and the letters' role in the fraudulent scheme." The Court concluded, "Because this information enables [the defendant] to file a meaningful answer, [the plaintiff's] allegations of mail fraud are sufficiently specific to satisfy Rule 9(b)." *Id.* at 196.

Finally, in *Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir.1988), the defendants were alleged to have issued "false and misleading corporate reports, press releases, and offering circulars." The Court said, "The complaint provides, in nineteen separate paragraphs, the date of each of these publications, specific descriptions of the representations made, the reasons for their falsity, and, where possible, the role of the individual defendants in preparation and dissemination." *Id.* at 1369. Consequently, the complaint met the requirements of Rule 9(b). *Id.* at 1369.

In this case, the Complaint alleges the following: The defendants met together in June, 1985, to discuss the sale of interests in MOIF to investors. (Complaint ¶¶ 37(b) and 13–18.) William Gammie, one of the defendants, "had full access to[,] and knowledge of[,] all information concerning the transactions" described in the Complaint. (Complaint ¶ 37(c).) Mr. Gammie "shared" that information with the other defendants. (Complaint ¶ 37(c).

To facilitate the sale of the securities, an offering memorandum and sales brochures were prepared by the defendants. (Complaint ¶¶ 15, 16.) The offering memorandum allegedly misrepresented the degree of risk, and the return which could reasonably be expected from the purchase of the securities. (Complaint ¶¶ 26–31.)

Deloitte reviewed the financial forecasts which were included in the memorandum. (Complaint ¶¶ 10, 28.) The accountant's re-view allegedly misrepresented the reasonableness of the financial forecasts which were included in the offering memorandum. (Complaint ¶ 29.)

The actual sale of the securities occurred after June 25, 1985. (Complaint ¶ 4.)[8] The contents of the memorandum and the accountant's review were conveyed to plaintiffs both verbally and through the mail. (Complaint ¶¶ 31, 73(a).) During the course of the sale, the defendants allegedly withheld their knowledge of actions on the part of the general partners which impaired the profitability of the partnership. (Complaint ¶¶ 32–34.)

Although not necessarily a model of pleading, the Complaint provides an adequate description of the time, content, and place of the allegedly false representations. The defendants argue, nevertheless, that the Complaint does not describe each defendant's role in the alleged fraud with adequate specificity. In *Wool v. Tandem Computers Inc.*, 818 F.2d at 1440, the Court said:

> In cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other "group-published information," it is reasonable to presume that these are the collective actions of the officers.... Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.

(Citations omitted). Fifteen months later, the presumption of collective action was extended to a board of directors. *Blake v. Dierdorff*, 856 F.2d at 1369. Then, in *Moore v. Kayport Package Exp., Inc.*, 885 F.2d at 540, the Court of Appeals said:

> Instances of corporate fraud may also make it difficult to attribute particular fraudulent conduct to each defendant as an individual. To overcome such difficulties in cases of corporate fraud, the alle-

**8.** The LR 8 Statement provides additional detail. It alleges the securities were sold during "the summer and fall of 1985." ¶ (e)(2).

gations should include the themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations.

That has been done in this case, albeit in general terms. Considering that no discovery has occurred, the plaintiffs' statement of the defendants' respective roles is adequate.

Defendants also object to allegations made upon "information and belief." It is true that "allegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b)." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d at 540 (citing *Wool v. Tandem Computers, Inc.*, 818 F.2d at 1439). "However, the rule may be relaxed as to matters with the opposing party's knowledge." *Id.* at 540.

The allegations made upon "information and belief" in paragraph 73 concern three types of mail and wire communications: those occurring among the defendants; those occurring between the defendants and unnamed third parties; and those occurring between the defendants and the plaintiffs. At this point, plaintiffs cannot be expected to know exactly how the defendants communicated with each other, or with third parties. Consequently, it is not unreasonable for them to make such allegations based upon information and belief.

The Court agrees with the defendants that some of the plaintiffs' allegations are either imprecise or ill-defined. The Complaint's flaws are distinguishable, however, from those which the Court of Appeals cited in *Schreiber Distrib.* and *Moore.* Since the Complaint is sufficiently specific to enable the defendants to file a meaningful answer, it meets the requirements of Rule 9(b). *Sun Savings And Loan Association v. Dierdorff,* 825 F.2d at 196.

### 2. Rule 12(b)(6)

For purposes of deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes the truth of all of the plaintiffs' material allegations. *Blake v. Dierdorff,* 856 F.2d at 1368. The motion may not be granted unless it ap-

pears " 'beyond doubt' that plaintiffs [can] prove no set of facts in support of their claim which would entitle them to relief." *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir.1988) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)).

As one of the elements of a civil RICO claim, the plaintiff must demonstrate a "pattern of racketeering." To prove the requisite pattern, a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. at 239, 109 S.Ct. at 2900 (emphasis in original).

Continuity may be established by at least two alternate means. The Supreme Court explained:

A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*Id.* at 242, 109 S.Ct. at 2902. However, the Court went on to say, "Often a RICO action will be brought before continuity can be established ['through a series of related predicates extending over a substantial period of time']. In such cases, liability depends on whether the *threat* of continuity is demonstrated." *H.J. Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902 (emphasis in original). For example, "The continuity requirement is ... satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO 'enterprise.' " *Id.* at 243, 109 S.Ct. at 2902.

Since *H.J. Inc.,* the Ninth Circuit Court of Appeals has decided two cases which illustrate this Circuit's approach to the continuity requirement. In *Ikuno v. Yip,* 912

F.2d 306 (9th Cir.1990), the plaintiff invested more than $70,000 in what proved to be a "phantom corporation." Mr. Ikuno sued, bringing claims under the Commodities Exchange Act, RICO, and state law. *Id.* at 308. The plaintiff's RICO claim was dismissed pursuant to a motion for summary judgment. On appeal, one of the issues was whether the plaintiff had produced sufficient evidence to demonstrate a pattern of racketeering. *Id.* at 309. The Court of Appeals held the plaintiff had. Addressing the question of continuity, the Court noted one of the defendants was alleged to have filed two false annual reports on behalf of the corporation. According to the Court, the defendant's acts "carried with them the threat of continuity. He was filing annual reports and there is no evidence that he would have stopped doing so if [the corporation] had not ceased to do business." *Id.* at 309.

The second case is *Ticor Title Ins. Co. v. Florida,* 937 F.2d 447 (9th Cir.1991). There, the plaintiff proved the defendants had, on three occasions, forged certificates which purported to release IRS tax liens. One of the forgeries occurred in the transaction which led to the lawsuit; the other two had occurred in unconnected transactions. *Id.* at 449. The Court of Appeals said, "[The defendants] forged the releases within a 13–month period. The frequency of the forgeries suggest that this practice had become a regular way of conducting business ..., satisfying the continuity prong of the pattern test." *Id.* at 450–51 (citations omitted).

Here, the sale of limited partnerships in MOIF occurred over a period of, at most, eight months. Eight months is not a "substantial period of time" within the meaning of *H.J. Inc. See, e.g., J.D. Marshall Intern. v. Redstart, Inc.,* 935 F.2d 815, 820–21 (7th Cir.1991) (thirteen months); *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1417–419 (3rd Cir.1991) (eight months); *American Eagle Credit Corp. v. Gaskins,* 920 F.2d 352, 354–55 (6th Cir. 1990) (six months). The sale of securities over that span of time cannot, by virtue of its length, "amount to" continued criminal

activity as required by *H.J. Inc.* 492 U.S. at 239, 109 S.Ct. at 2900.

That is not the end of the matter, however. The Court must next determine whether any of the characteristics of this transaction indicate it "pose[s] a threat" of continued criminal activity. *Id.* at 239, 109 S.Ct. at 2900.

After carefully considering the conduct which is described in the Complaint, the Court can find no threat of repetition. Once the offering closed, the sale of securities ceased. There is nothing in the Complaint to suggest the defendants ever intended to resume the sale of limited partnerships in MOIF, thus distinguishing the defendants' behavior from that recounted in *Ikuno.* Nor is there anything to indicate the (allegedly) fraudulent sale of securities had become a regular way of conducting business for any of the defendants, unlike the practice of forging lien releases in *Ticor Title.*

During argument of the motions to dismiss, the plaintiffs suggested that since Shearson is in the business of selling securities, and Deloitte continues to review financial forecasts, the Court may infer a threat of continuity. There are two problems with that reasoning. For one thing, it does not appear that the sales of securities or financial reviews which plaintiffs alluded to constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). For another, there is no indication that such sales or reviews are related to the acts alleged in the Complaint. Predicates are related when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. at 2900. The bare assertion that Shearson is in the business of selling securities and that Deloitte continues to review financial forecasts is not sufficient to meet that test. Absent an allegation that the other sales or reviews are racketeering activity which are related to the predicates alleged in the Complaint, such acts cannot establish a pattern of racketeering. Thus, it is unneces-

sary to determine whether such other sales of securities or financial reviews establish a "threat of continued criminal activity."

Alternatively, plaintiffs argue that the existence of multiple victims of an allegedly fraudulent scheme is sufficient to satisfy the continuity requirement. Again, the Court disagrees. " 'Continuity' is ... a temporal concept." *H.J. Inc.*, 492 U.S. at 241–42, 109 S.Ct. at 2902. In a case such as this, the question is whether the defendants' past conduct "projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902. The number of victims will often be relevant to that question; but by itself, the number of victims will never be dispositive.

The two Ninth Circuit cases cited by the plaintiffs (though decided before *H.J. Inc.*) are in accord. In *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987), the defendant was alleged to have committed "thirteen acts of fraud, clearly related, with similar purposes, results, participants, victims, and methods of commission." The Court said, "Because these acts were many, continuous and related, we have no difficulty concluding that a pattern of racketeering activity was pled...." *Id.* at 918. Similarly, in *United Energy Owners v. United Energy Management*, 837 F.2d 356, 361 (9th Cir.1988), the Court "conclude[d] that the plaintiffs' allegations of multiple fraudulent acts involving multiple victims over more than one year are sufficiently related to [establish a pattern of racketeering activity]."

In both *Televideo Systems* and *United Energy Owners*, the number of victims was a factor. But it was not the only factor considered, nor even the most important. Neither case supports the proposition that the existence of multiple victims is sufficient to create continuity.

In view of the foregoing, the Court is compelled to conclude that the plaintiffs cannot prove the defendants engaged in a pattern of racketeering. Since that is an essential element of a RICO claim, the plaintiffs have failed to state a claim for

which relief can be granted. Count V must be dismissed.

The plaintiffs requested leave to amend their Complaint in the event the Court granted defendants' 12(b)(6) motions. "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987). None of the first three factors would preclude amendment at this time, so the only question is whether an amendment would be futile. In that regard, the Court notes that when a cause of action is dismissed pursuant to Rule 12(b)(6), "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distributing v. Serv–Well Furniture Co.*, 806 F.2d at 1401 (citation omitted).

Although the plaintiffs requested leave to amend, they did not specify which additional facts they could plead to satisfy the requirements of *H.J. Inc.* Given the contours of this case, the Court can postulate no set of facts which would be sufficient to establish a pattern of racketeering activity. Consequently, amendment would be futile.

### D. State Claims

■ Since the federal claims (counts I and V) have been dismissed, the Court must decide whether to retain supplemental jurisdiction[9] over the state claims (Counts II, III, and IV). Although the Court may retain jurisdiction, the better practice is to dismiss the state claims without prejudice. *See Cook, Perkiss & Liehe v. Northern California Collection Service Inc.*, 911 F.2d 242, 247 (9th Cir.1990); *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir.1985); *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 651 (9th Cir.1984) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).

**9.** 28 U.S.C. § 1367(c)(3).

IT IS HEREBY ORDERED:

*Count I* is DISMISSED *with prejudice* as to Marley Orchards Corporation, Shearson Lehman Brothers, Inc., and Deloitte & Touche.

*Count II* is DISMISSED *without prejudice* as to Marley Orchards Corporation, Shearson Lehman Brothers, Inc., and Deloitte & Touche.

*Count III* is DISMISSED *without prejudice* as to Marley Orchards Corporation, Shearson Lehman Brothers, Inc., and Deloitte & Touche.

*Count IV* is DISMISSED *without prejudice* as to Marley Orchards Corporation, Shearson Lehman Brothers, Inc., and Deloitte & Touche.

*Count V* is DISMISSED *with prejudice* as to Marley Orchards Corporation, Shearson Lehman Brothers, Inc., and Deloitte & Touche.

IT IS SO ORDERED.