881 F.2d 1495
 Fed. Sec. L. Rep. P 94,541, 14 Fed.R.Serv.3d 600
 Merle and Doris REEVES; Herman J. and Anna Davis; John
Shierman; Milton and Joann Johnson; Ralph and Margaret
Boyden; Kenneth and Janice Lundeberg; Barbara Chodakaskua;
Robert and Mary Lou Garwood; Arthur Pohlman; Richard and
Adele Mansfield; Eudore Berry; Sarah Elizabeth Berry;
Frank and Dorothy Donahue; and Asghar Sadri, Elsie
Shierman, Plaintiffs-Appellees,
v.
Wallace V. TEUSCHER, and Joan Teuscher, his wife, and the
marital community composed thereof; Defendants,
and
Edward Borkowski and Alina Borkowski, his wife, and the
marital community composed thereof, Defendants-Appellants.
 Nos. 86-3964, 86-4028 and 86-4110.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 9, 1989.
Decided Aug. 10, 1989.
 
 Roger A. Myklebust and J. Tayloe Washburn, Seattle, Wash., for defendants (Teuscher).
 Kevin P. O'Connell, Portland, Or., for defendants-appellants (Borkowski).
 J. Ronald Sim and Kenneth G. Whitaker, Seattle, Wash., for plaintiffs-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT and ALARCON, Circuit Judges, and TEVRIZIAN,* District Judge.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 Wallace Teuscher sold interests in Badger Mountain South (BMS) to appellees, misrepresenting its value and investment potential. They sued, alleging primarily securities violations and a jury awarded them damages. We affirm as to all appellees except Asghar Sadri as to whom we reverse.
 
 BACKGROUND
 
 2
 In 1974 Teuscher bought 2400 acres of property in Benton County, Washington, known as Badger Mountain South. Between October 1, 1975 and January 1, 1976, he sold through his broker, Edward Borkowski, approximately 48% of it as undivided interests to all appellees, except Sadri. Beginning in January 1976 and until 1983, he assessed development expenses against those with undivided interests.
 
 
 3
 Appellees except Sadri are 12 unsophisticated investors who sought low risk investments. An experienced real estate investor, Sadri acquired an interest in BMS when, in June 1977, he and Teuscher consolidated assets and formed a general partnership, Triangle Land Company. At that time, Teuscher contributed his 52% undivided interest in BMS to the partnership. Sadri paid assessments through the partnership beginning in 1977 and continuing through 1983.
 
 
 4
 A limited partnership, Badger Mountain South, Ltd., was formed in 1981 to develop BMS. Triangle became the general partner of BMS, Ltd., and those who had bought undivided interests from Teuscher became limited partners. Sadri remained a general partner of Triangle, which was the general partner of BMS, Ltd.
 
 
 5
 In November 1984, Sadri and the other appellees filed this action against Teuscher and Borkowski. After a three week trial the jury found against Teuscher and Borkowski and in favor of all appellees on their (1) Securities Act of 1933 claims; (2) Securities Exchange Act of 1934 claims; (3) Washington and Oregon securities acts claims; and (4) Washington Consumer Protection Act claim.[1] Teuscher and Borkowski challenged the sufficiency of the evidence by moving for judgment not withstanding the verdict (JNOV) and a new trial, which the court denied. They appealed.
 
 DISCUSSION
 I. Judgment Notwithstanding the Verdict
 
 6
 A party under Fed.R.Civ.P. 50(b) must move for a directed verdict at the close of the evidence to question the sufficiency of the evidence through JNOV. Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co., 786 F.2d 1342, 1345 (9th Cir.1985). Although courts construe strictly the requirement that a motion be made after a case-in-chief, they are generally more liberal about what suffices as a motion for a directed verdict after the close of all the evidence. Id. at 1346-47. Fed.R.Civ.P. 50(b) may be satisfied by an ambiguous or inartfully made motion for a directed verdict or by an objection to an instruction for insufficient evidence to submit an issue to the jury. Id.
 
 
 7
 Although Teuscher and Borkowski attempted to move for a directed verdict after all the evidence was in, the court interrupted and told them to renew their motion after the verdict. They did so. In these circumstances their motion suffices, is timely, and they may challenge the sufficiency of the evidence.
 
 
 8
 Viewing the evidence in a light most favorable to appellees, we inquire if the evidence and inferences can reasonably support only one conclusion as to the verdict. Peterson v. Kennedy, 771 F.2d 1244, 1252 (9th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986); Garvin v. Greenbank, 856 F.2d 1392, 1396 (9th Cir.1988).
 
 
 9
 A. Does Sufficient Evidence Support the Finding that Appellees' Interests Are Securities?
 
 
 10
 Teuscher and Borkowski contend that appellees may not recover on a security claim because their interests in BMS were not securities.[2] They attack the sufficiency of the evidence to support the jury's finding.
 
 
 11
 Section 2(1) of the 1933 Act defines security:[3]
 
 
 12
 The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness ... investment contract ... or, in general, any interest or instrument commonly known as a security.
 
 
 13
 15 U.S.C. Sec. 77b(1).
 
 
 14
 An interest meets the investment contract test when it involves (1) an investment of money (2) in a common enterprise (3) with profits to come solely from the efforts of others.[4] Matek v. Murat, 862 F.2d 720, 725 (9th Cir.1988) (citing SEC v. W.J. Howey Co., 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946)). An investment satisfies this third element when the efforts made by those other than the investor are the ones which affect significantly the failure or success of the enterprise. Deutsch Energy Co. v. Mazur, 813 F.2d 1567, 1569 (9th Cir.1987) (citing SEC v. Glenn W. Turner Enter., Inc., 474 F.2d 476, 482 (9th Cir.), cert. denied, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973)).
 
 
 15
 Appellants contend that appellees' interest does not meet the Howey test for an investment contract. They argue that the evidence shows that appellees' efforts affected significantly the success or failure of the enterprise. We disagree.
 
 
 16
 Viewing the evidence in the light most favorable to appellees, we find that their efforts played almost no role in the success or failure of BMS. See, e.g., SEC v. Murphy, 626 F.2d 633, 641 (9th Cir.1980). They testified that Borkowski and Teuscher told them that Teuscher would manage BMS, that he was an expert in converting dry land to wet land, and that he had successfully done so with similar projects, Irrigo and Tee-Farms. Although they attended meetings and approved his plans, they testified that they relied on his expertise. They only supplied the capital.
 
 
 17
 Teuscher and Borkowski contend also that appellees' had no expectation of monetary return. We disagree. They testified that Teuscher and Borkowski promised them returns of two to three times their investment.
 
 
 18
 B. Does Sufficient Evidence Support a Finding that Sadri's General Partnership Interest in Triangle Land Company is a Security?
 
 
 19
 Teuscher contends that Sadri's interest in BMS is not a security because Sadri had a right to manage BMS as a general partner in Triangle.[5] Unlike the other appellees, Sadri acquired an interest in BMS when he and Teuscher formed the Triangle Land Company, and Teuscher contributed BMS as one of its assets. Later, appellees and appellants formed BMS, Ltd., to develop BMS and all appellees except for Sadri became limited partners of BMS, Ltd. Sadri remained a general partner of Triangle which was the general partner of BMS, Ltd.
 
 
 20
 The jury found that Sadri's interest in BMS was a security. Although Instruction # 27 did not list specifically Sadri's general partnership interest in Triangle, the jury awarded him over a million dollars in damages. From this, we conclude that the jury determined that his interest was a security. See Graphic Prod. Distrib., Inc. v. Itek Corp., 717 F.2d 1560, 1569 (11th Cir.1983) (when court fails to submit issue to jury, it may under Fed.R.Civ.P. 49(a) make a finding, or if it fails to do so, will be deemed to have made a finding consistent with the judgment on the special verdict); Faison v. Nationwide Mortg. Corp., 839 F.2d 680, 686 (D.C.Cir.1987), cert. denied, --- U.S. ----, 109 S.Ct. 70, 102 L.Ed.2d 46 (1988).
 
 
 21
 We have held that a general partnership interest is not a security because it fails the Howey test for an investment contract.[6] See Stone v. Millstein, 804 F.2d 1434, 1439 (9th Cir.1986). But we have acknowledged that such an interest may be a security if a manager's or promoter's efforts are the "undeniably significant ones." Matek, 862 F.2d at 725. In this situation, "[t]he proper focus must be the partnership agreement and not how in fact the entity functioned in carrying out its business affairs." Id. at 731.
 
 
 22
 Viewing the evidence in the light most favorable to Sadri, we find that the evidence permits only one reasonable conclusion. He did not have a security. The agreement here, "Consolidation of Assets and Partnership Agreement," is a standard general partnership contract. It refers to Teuscher and Sadri as "co-partners" and says that their interests as co-partners shall be defined by the Washington Uniform Partnership Act. Wash Rev.Code ch. 25.04. That Act gives Sadri and Teuscher equal rights to manage and control the partnership. Wash.Rev.Code Secs. 25.04.180(5), 25.04.240(3). It gives Sadri access to partnership records and information about its regular business transactions. Wash.Rev.Code Sec. 25.04.190. It limits transferability of the general partnership interest. Wash.Rev.Code Sec. 25.04.180(7).
 
 
 23
 The Agreement itself creates strong powers of control and supervision that are not typical of a passive investor in a security. See Matek, 862 F.2d at 731. It specifies that ventures:
 
 
 24
 shall be undertaken on a mutual consent basis only and all decisions made throughout the course of each venture shall be jointly made. For this purpose, either party may veto any decision made by the other, including business venture, office management and all other decisions.
 
 
 25
 It provides that profits and losses will be shared equally. See also Wash.Rev.Code Sec. 25.04.180(1). Sadri himself testified that he and Teuscher formed BMS for the purpose of common management of all assets.
 
 
 26
 Sadri offered no evidence that his general partnership agreement with Teuscher was drafted purposefully to escape the application of securities laws. The evidence shows only that they intended to form a working general partnership interest. Although Sadri presented evidence that showed Teuscher had primary responsibility for managing BMS, he offered nothing to indicate that Teuscher prevented him from exercising his powers under the Triangle partnership agreement.[7] See Matek, 862 F.2d at 731.
 
 
 27
 We reverse and direct judgment for Teuscher on Sadri's federal and state securities claims. This leaves only his Washington Consumer Protection Act claim.
 
 
 28
 C. Does Sufficient Evidence Support a Finding that the Statutes of Limitation Had Expired?
 
 
 29
 Teuscher and Borkowski contend that statutes of limitation bar all of appellees' securities claims. First, they argue that statutes of limitation bar appellees' misrepresentation claims under federal and state securities laws because they knew or should have known of any misrepresentation more than four years before this suit.
 
 
 30
 Because a forum state's statute of limitation for general fraud claims determines the limitation period for claims under Sec. 10(b) of the 1934 Act[8] and S.E.C. Rule 10(b)(5),[9] we apply the three-year statute of Wash.Rev.Code Sec. 4.16.080(4). See, e.g., Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1411-12 (9th Cir.1987); Hilton v. Mumaw, 522 F.2d 588, 601-02 (9th Cir.1975); Douglass v. Glenn E. Hinton Investments, Inc., 440 F.2d 912, 915-16 (9th Cir.1971).
 
 
 31
 Federal law determines when the statute begins to run. Volk, 816 F.2d at 1412 (citing SEC v. Seaboard Corp., 677 F.2d 1301, 1309 (9th Cir.1982)). A defrauded person triggers the statute when he has actual or inquiry notice of a fraudulent misrepresentation. Volk, 816 F.2d at 1412; see also Davis v. Birr, Wilson & Co., Inc., 839 F.2d 1369, 1370 (9th Cir.1988) (actual knowledge of fraud or facts sufficient to put reasonable person on notice). The determination of whether a plaintiff knew or should have known of a cause of action presents a question for the trier of fact.[10] Volk, 816 F.2d at 1417; Hilton, 522 F.2d at 602.
 
 
 32
 Viewing the evidence in the light most favorable to appellees, we find sufficient evidence to support the jury's finding that they did not know and should not have known of Teuscher and Borkowski's misrepresentations until 1983 or 1984.[11] Most appellees testified that Teuscher and Borkowski told them that BMS would be converted from dry to wet land and then sold. Teuscher and Borkowski told some that ranchettes would be developed or the land would be farmed. Because appellees did not know one another or have reason to distrust Teuscher's and Borkowski's statements, they did not discuss the conflicting plans among themselves.
 
 
 33
 Whenever Teuscher's plans for developing BMS would fail, he would tell appellees that a more lucrative opportunity had been presented and advise them to pursue the new plan. He did not inform them that the prior project had failed because he could not obtain financing or find investors. To hide the failed scheme, he lied to appellees and intimidated anyone who questioned him. Only when a number of these plans for BMS had failed, did appellees begin to question him in 1983 or 1984. The jury could reasonably infer that appellees did not know or have reason to know of fraud until 1983 or 1984.
 
 
 34
 Teuscher and Borkowski argue that the statute of limitation bars appellees' Consumer Protection Act (CPA) claim. Wash.Rev.Code Sec. 19.86.120 provides that "[a]ny action to enforce a claim for damages under RCW Sec. 19.86.090 [CPA] shall be forever barred unless commenced within four years after the cause of action accrues." Generally, an action for fraud in Washington accrues when the person discovers the facts constituting the fraud. Wash.Rev.Code Sec. 4.16.080(4); cf. Strong v. Clark, 56 Wash.2d 230, 352 P.2d 183, 184 (1960). Knowledge will be inferred if the party in due diligence could have discovered the fraud. Clark, 352 P.2d at 184.
 
 
 35
 The evidence that appellees did not discover and could not have discovered the securities fraud supports that they did not discover the misrepresentations that formed the basis of their CPA claim.
 
 
 36
 D. Does Sufficient Evidence Support a Finding that Appellees Relied Justifiably?
 
 
 37
 Teuscher and Borkowski argue that there is no evidence that appellees relied on misrepresentations and omissions. Appellees were required to prove reliance to establish their federal and state securities fraud claims.[12] See Instruction # 6 and # 9.
 
 
 38
 Sufficient evidence establishes that appellees relied on Teuscher and Borkowski's misrepresentations. They testified that Borkowski and Teuscher misrepresented that BMS was a safe low risk investment, omitted significant information about BMS and misrepresented that Teuscher was an expert. They testified that they relied on these misstatements and omissions when they decided to invest in BMS. Teuscher testified they relied on him for the value of the property.
 
 
 39
 E. Does Sufficient Evidence Support a Finding that Teuscher and Borkowski Violated the Consumer Protection Act?
 
 
 40
 Teuscher and Borkowski contend incorrectly that sufficient evidence does not support the CPA claim.
 
 
 41
 In Travis v. Washington Horse Breeders Ass'n, Inc., 111 Wash.2d 396, 759 P.2d 418 (1988), defendants argued that the CPA did not apply. The court reviewed for sufficiency of the evidence, inquiring if defendants had shown: (1) an unfair deceptive act or practice (2) in trade or commerce (3) which affected the public interest; (4) a showing of injury to plaintiff's business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered.[13] Id. 759 P.2d at 423.
 
 
 42
 Teuscher and Borkowski contend that appellees presented insufficient evidence to establish the first, third and fifth elements. First, they argue that their actions did not have the capacity to deceive a substantial portion of the public. We disagree.
 
 
 43
 The investors did not have to show an intent to deceive, only that the alleged act had the capacity to deceive a substantial portion of the public. Id. They testified that Teuscher and Borkowski represented that BMS was an excellent, low risk investment similar to Irrigo and Tee-Farms. They made these representations to many investors, seeking any with large amounts of cash. They gave conflicting stories of their plans to develop BMS to different individuals. These actions had the capacity to deceive and did so.
 
 
 44
 Second, they contend that this private transaction cannot meet the public interest requirement. "[I]t is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public instead." Hangman Ridge Training v. Safeco Title Ins., 105 Wash.2d 778, 719 P.2d 531, 539 (1986)). To satisfy this element, the trier of fact considers if: (1) the alleged act was committed in defendant's business; (2) the defendant advertised to the public; (3) the defendant solicited actively the plaintiff; and (4) the plaintiff and defendant occupied unequal bargaining positions. Id. Not all of these factors must be met nor is one dispositive. Id.
 
 
 45
 Teuscher's agent, Borkowski and Teuscher acted within the scope of their business, to find investors and to develop BMS. Although they did not buy advertising, they actively solicited appellees to invest. Finally, they occupied the stronger bargaining position and were appellees' sole source of information about their investment.
 
 
 46
 Finally, they contend incorrectly that substantial evidence does not show a causal link between the unfair or deceptive act complained of and the injury suffered. Appellees testified that Teuscher and Borkowski's misrepresentations about Teuscher's expertise and the risk of the BMS investment induced them to invest in BMS. They also testified that had they known the truth, they would not have invested.
 
 
 47
 F. Does Sufficient Evidence Support a Finding that Teuscher Violated the CPA?
 
 
 48
 Teuscher contends that the CPA does not apply to Sadri's claim that his misrepresentations induced Sadri to enter the Triangle partnership and to pay assessments. We agree.
 
 
 49
 In this instance, Sadri has not presented sufficient evidence that the public interest element is met. The context in which Teuscher's misrepresentations occurred was essentially a private transaction between two business persons seeking to establish a general partnership. Again, the factors we consider are (1) if Teuscher acted in the course of his business; (2) if he advertised to the public; (3) if he solicited actively Sadri; and (4) if the parties occupied unequal bargaining positions. See Travis, 759 P.2d at 423.
 
 
 50
 Although the misrepresentations were committed in the course of Teuscher's business, he did not advertise, did not solicit Sadri, and did not occupy a superior bargaining position. The evidence shows that BMS was one of the properties contributed by Teuscher when he and Sadri consolidated assets and formed the Triangle partnership. They negotiated for months to determine what properties would become a part of Triangle. Sadri asked Teuscher to contribute BMS. Sadri had years of real estate investment experience, questioned Teuscher extensively about BMS and the other properties and even rejected one of Teuscher's properties.
 
 
 51
 Sadri was not representative of bargainers subject to exploitation and unable to protect himself. See, e.g., Hangman, 719 P.2d at 540 (plaintiffs with history of business experience could not establish public interest element of an escrow agent-client transaction where agent failed to advise client of the consequences of transaction).
 
 
 52
 In Life Ins. Co. v. Turnbull, 51 Wash.App. 692, 703, 754 P.2d 1262 (1988), the court affirmed the dismissal of a CPA claim. There, the plaintiffs brought an action against a real estate broker and agent for misrepresenting the development potential of commercial property. Id. at 694-96, 754 P.2d 1262. The court found that plaintiffs could not establish the public interest element because they had a history of business experience and sufficient sophistication to remove them from the class of bargainers subject to exploitation. Id. at 704, 754 P.2d 1262; see also Broten v. May, 49 Wash.App. 564, 744 P.2d 1085, 1089 (1987) (two most important factors are solicitation and bargaining position).
 
 
 53
 Sadri had sufficient experience and sophistication to protect himself. At the time Sadri and Teuscher began partnership negotiations, he had ten to 15 years of experience selling and developing residential and commercial real estate. He had entered partnerships to develop real estate since 1972 and had been a part of approximately 30. He had even developed land in Kennewick, Washington, near BMS.
 
 
 54
 There is insufficient evidence that Sadri established the public interest element of the CPA claim. We reverse and direct judgment for Teuscher on Sadri's CPA claim.
 
 II. Verdict Form
 
 55
 Teuscher and Borkowski objected to the form of verdict. The district court has discretion to submit a general or special verdict form with special interrogatories.[14] Dobbs v. Gulf Oil Co., 759 F.2d 1213, 1215 n. 3 (5th Cir.1985) (complete discretion as to form); R.H. Baker & Co. v. Smith-Blair, Inc., 331 F.2d 506, 508 (9th Cir.1964) (same). There was no error.
 
 III. CONCLUSION
 
 56
 Because we find that Sadri did not have a security and did not have a valid CPA claim, we reverse the verdict in his favor. We affirm as to all other appellees. Their request for attorneys' fees on appeal is denied. The parties will bear their own costs on appeal.
 
 
 57
 AFFIRMED in part and REVERSED in part.
 
 
 
 *
 Of the Central District of California
 
 
 [1]
 Appellees prevailed on these claims: Section 10(b) of the 1934 Act, 15 U.S.C. Sec. 78j(b); Securities and Exchange Commission Rule 10(b)-5, 17 C.F.R. Sec. 240.10b-5; Section 12(2) of the 1933 Act, 15 U.S.C. Sec. 77 l (2); Washington securities fraud provision, Wash.Rev.Code Sec. 21.20.010; Oregon securities fraud provision, Or.Rev.Stat. Sec. 59.135; Section 15(c)(1) of the 1934 Act, 15 U.S.C. Sec. 78o (c)(1); Washington securities registration provisions, Wash.Rev.Code Sec. 21.20.140; Oregon securities registration provisions, Or.Rev.St. Sec. 59.055; and Washington Consumer Protection Act, Wash.Rev.Code Secs. 19.86.020, 19.86.090
 Although the jury found a violation of Sec. 17(a) of the Securities Act of 1933, appellees concede no private cause of action exists. See In re Washington Pub. Power Supply Sys. Sec. Lit., 823 F.2d 1349, 1358 (9th Cir.1987) (holding no private cause of action).
 
 
 [2]
 Instruction # 27 is ambiguous. The jury could have determined that each interest listed in the Instruction was a security or that appellees' interests in an entirety were a security. Because we must reconcile the jury's special verdict responses on any reasonable theory consistent with the evidence, we consider that the jury found the entire interest to be a security. Cf. Ortiz v. Bank of Am. Nat'l Trust & Sav. Ass'n, 852 F.2d 383, 388 (9th Cir.1988) (citing Gallick v. Baltimore & O. R.R., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963)) (additional citations omitted)
 
 
 [3]
 Section 3(a)(10) of the 1934 Act defines security, 15 U.S.C. Sec. 78c(a)(10), in essentially the same manner. See, e.g., Matek v. Murat, 862 F.2d 720, 724 (9th Cir.1988); Deutsch Energy Co. v. Mazur, 813 F.2d 1567, 1569 n. 2 (9th Cir.1987)
 
 
 [4]
 Oregon and Washington include investment contract within their definition of security. Wash.Rev.Code Sec. 21.20.005(12); Or.Rev.Stat. Sec. 59.015(16)(a). Washington has adopted the Howey test for determining whether an investment is an investment contract. See State v. Philips, 108 Wash.2d 627, 741 P.2d 24, 28, 30 (1987) (citing Sauve v. K.C., Inc., 91 Wash.2d 698, 591 P.2d 1207 (1979))
 Oregon has adopted a modified version of the Howey test. A transaction is an investment contract if it is an investment of money in a common enterprise with the expectation that profits will come through the management and control of others. See Pratt v. Kross, 276 Or. 483, 555 P.2d 765, 773 (1976).
 
 
 [5]
 The jury found in favor of Borkowski on Sadri's claims against him
 
 
 [6]
 Except for the Fifth Circuit, Williamson v. Tucker, 645 F.2d 404 (5th Cir.), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), each to have addressed whether a general partnership interest is a security has held that it is not. See, e.g., Goodwin v. Elkins & Co., 730 F.2d 99, 103-08 (3d Cir.), cert. denied 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984); Odom v. Slavik, 703 F.2d 212, 216 (6th Cir.1983) (per curiam); Hirsch v. du Pont, 553 F.2d 750 (2d Cir.1977). In SEC v. Professional Ass'n, 731 F.2d 349, 357 (6th Cir.1984), the court found investments masquerading as general partnership interests to be securities. They were, however, equivalent to limited partnership interests that are almost always held to be securities
 
 
 [7]
 Teuscher argues that Sadri's affidavit in a Washington superior court case should have been admitted to impeach his testimony. Having found that Sadri did not hold a security interest, we do not reach this issue
 
 
 [8]
 15 U.S.C. Sec. 78j
 
 
 [9]
 17 C.F.R. Sec. 240.10-b-5
 
 
 [10]
 A three year statute also governs fraud claims brought under Wash.Rev.Code Sec. 21.20.010. Wash.Rev.Code Sec. 21.20.430(4)(b); Goldberg v. Sanglier, 27 Wash.App. 179, 616 P.2d 1239, 1247 (1980), rev'd on other grounds, 96 Wash.2d 874, 647 P.2d 489, 639 P.2d 1347 (1980). Here, too, the question of when misrepresentations are discovered or when a violation would have been discovered in the exercise of reasonable care is for the fact finder. See Hilton, 522 F.2d at 595 (citing Imus v. Reeder, 119 Wash. 699, 699-700, 205 P. 380 (1922))
 Under Or.Rev.Stat. Sec. 59.135(2) fraud claims have a two-year statute that begins to run when the person discovered or should have discovered the facts on which the action was based. Or.Rev.Stat. Sec. 59.115(5).
 
 
 [11]
 Teuscher and Borkowski argue also that statutes of limitation bar appellees' federal and state securities claims for the sale of unregistered securities. These claims include Section 12(2) of the Securities Act of 1933, 15 U.S.C. Sec. 77l (2), Wash.Rev.Code Sec. 21.20.140 and Or.Rev.Stat. Sec. 59.055 of the Oregon Securities Act. They argue that the limitations periods bar claims before November 1981. Instruction # 25 and the verdict form only included claims after November 1981
 
 
 [12]
 Reliance is an element of a Sec. 10(b) and Rule 10b-5 claim. See Crocker-Citizens Nat'l Bank v. Control Metals Corp., 566 F.2d 631, 636 n. 3 (9th Cir.1977). It is also an element under the Washington fraud statute, see Shermer v. Baker, 2 Wash. App. 845, 858, 472 P.2d 589, 597 (1970), and the Oregon fraud provision. Cf. Shivers v. Amerco, 670 F.2d 826 (9th Cir.1982)
 
 
 [13]
 At the time of trial, defendants were required to show (1) an unfair or deceptive act or practice: (2) in trade or commerce; (3) which affected the public interest. The Washington Supreme Court expanded these elements from three to the five listed above. To avoid a retroactivity problem, the court in Travis reviewed for evidence under all five elements. So do we
 
 
 [14]
 Teuscher contended that res judicata barred Sadri's 1933 Act, Washington and Oregon securities acts and CPA claims. He argued that collateral estoppel precluded his 1934 Act claims. Having found that Sadri did not hold a security and could not establish a CPA claim, we do not address these contentions