Samuel WEGBREIT, et al., Plaintiffs,

v.

MARLEY ORCHARDS CORP., et al., Defendants.

No. CS–91–191–FVS.

United States District Court, E.D. Washington.

May 11, 1992.

J. Christopher Lynch, Richard W. Kuhling, Larry R. Small, Paine, Hamblen, Brooke, Coffin, Miller, Spokane, Wash., Herbert Beigel, Ronald Alan Schy, Beigel & Sandler, Chicago, Ill., for plaintiffs.

J. Lawrence Wright, Timothy J. Carlson, Halverson and Applegate, Yakima, Wash., Kenneth S. Goodsmith, Timothy Bunker Hardwicke, Latham & Watkins, Chicago, Ill., Malcolm L. Edwards, Edwards, Sieh, Wiggins & Hathaway, Seattle, Wash., Patrick J. Callans, Peter S. Ehrlichman, Foster, Pepper & Shefelman, Seattle, Wash., for defendants.

H. Nicholas Berberian, Robert J. Mandel, Neal, Gerber and Eisenberg, Chicago, Ill., Evan L. Schwab, Richard D. Vogt, John A. Tondini, Bogle & Gates, Seattle, Wash., for defendant Deloitte & Touche.

Grant E. Courtney, R. Bruce Johnston, Lane, Powell, Spears, Lubersky, Seattle, Wash., for intervenor-plaintiff.

## ORDER GRANTING MOTION TO REINSTATE § 10(b) CLAIMS

VAN SICKLE, District Judge.

BEFORE THE COURT is Plaintiffs' Motion to Reinstate § 10(b) Claims (Ct. Rec. 63). For the reasons set forth below, the motion is granted.

### A. BACKGROUND

Marley Orchards Income Fund I Limited Partnership (hereinafter "MOIF") was created to operate apple orchards in the Yakima Valley. It has two general partners—Marley Orchards Corporation and William Gammie. During 1985, the general partners raised 15.7 million dollars by selling limited partnerships in MOIF.[1]

The partnership did not achieve the degree of success which had been predicted, however. In fact, MOIF filed for bankruptcy in the Eastern District of Washington on March 17, 1990.

This action was commenced on February 13, 1991, in Cook County, Illinois, against three defendants—Marley Orchards, William Gammie, and Shearson Lehman Brothers, Inc. (MOIF was not named.) The complaint alleged fraud, breach of fiduciary duty, and negligence. (Complaint for Rescission, Fraud, and Breach of Fiduciary Duty (Ct. Rec. 1–1), Exhibit A.)

On March 19, 1991, Marley Orchards and William Gammie removed this matter to the Northern District of Illinois, Eastern Division. According to them, the pending

---

1. A more complete statement of facts is set forth in the Order of Dismissal (Ct.Rec. 62), at 2–3.

bankruptcy proceedings conferred federal jurisdiction. (Notice of Removal (Ct. Rec. 1–1), at 1–3.) After removal, Marley Orchards and Gammie moved for an order transferring the case to the Eastern District of Washington.

On the same day, MOIF requested the Bankruptcy Court to enjoin further prosecution of this action. A temporary restraining order was issued on the twenty-first of March, and a hearing was scheduled for the twenty-ninth. At the hearing, the plaintiffs agreed to withdraw their motion to remand to state court. They also agreed that the case should be transferred to the Eastern District of Washington.

On the fifth of April, the plaintiffs filed an amended complaint in federal court in Illinois. (First Amended Complaint and Jury Demand (Ct. Rec. 10).) The amended complaint differed from its predecessor in a number of respects, two of which are material to the plaintiffs' motion to reinstate. It added Deloitte & Touche as a defendant, and it alleged violations of § 10(b) of the Securities Exchange Act of 1934.

The case was transferred to this district on the twenty-second of April. (Stipulated Order (Ct. Rec. 11), at 2.) Thereafter, Marley Orchards, Deloitte, and Shearson moved to dismiss. Their motions were granted by order entered on November 25, 1991, 793 F.Supp. 957. (Order of Dismissal (Ct. Rec. 62), at 3–5.)

Dismissal of the plaintiffs' § 10(b) claims was based upon *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (hereinafter *"Lampf"*). There, the Supreme Court held that, "Litigation institut-

ed pursuant to § 10(b) and Rule 10b–5 ... must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." 111 S.Ct. at 2782.[2] Since the acts upon which the § 10(b) claims were predicated occurred during "the summer and fall of 1985," but the plaintiffs' complaint was not filed until 1991, the claims were time-barred.

In response to *Lampf,* Congress amended the Securities and Exchange Act of 1934. It did so by adding § 27A, which provides:

(a) *Effect on Pending Causes of Action.* The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

(b) *Effect on Dismissed Causes of Action.* Any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991—

(1) which was dismissed as time barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity,[3] as such laws existed on June 19, 1991,

shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section.

Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242, § 476, 105 Stat. 2236.

---

**2.** *Lampf* was applied retroactively to the parties of this case by virtue of *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481 (1991).

**3.** The defendants argue that, under the law of either Illinois or Washington, a statute of repose cannot be applied retroactively to affect the substantive rights of the parties. Whatever the merits of the defendants' interpretation of state law, it is clear that Congress had something else in mind when it inserted the phrase "including principles of retroactivity." As Senator Bryan explained:

A number of courts had switched from a "borrowing" approach to a federalized and shortened statute of limitations, but had declined to apply the uniform federalized approach retroactively because of the obvious unfairness of doing so. In those circuits that had declined to apply the shortened statute retroactively, the courts would continue to be obliged to decline to apply the new rule. *That is the meaning of the phrase "including principle [sic] of retroactivity."*

137 CONG.REC. S18624 (daily ed. Nov. 27, 1991) (statement of Sen. Bryan) (emphasis added).

## B. REINSTATEMENT

To qualify for reinstatement, the plaintiffs must demonstrate the following: (1) their § 10(b) claims were filed on or before June 19, 1991; (2) as of that date, the applicable statute of limitations had not expired;[4] (3) their claims were dismissed as time-barred after June 19, 1991; and (4) they filed a motion to reinstate within sixty days of the date § 27A was enacted. Of the four conditions,[5] only the second is in dispute. The defendants deny that the plaintiffs' claims were timely.

According to § 27A(b)(2), the relevant limitations period is the one "provided by the laws applicable in the jurisdiction ... as such laws existed on June 19, 1991." By that date, the plaintiffs' claims had been transferred to this jurisdiction pursuant to 28 U.S.C. § 1404(a). Thus, the Court must determine which limitations period applied in this jurisdiction on that date.

The answer to that question is complicated by the fact the plaintiffs' § 10(b) claims were first filed in the Northern District of Illinois. Were this a diversity action, it is clear that the transfer of the case would amount to nothing more than "a change of courtrooms." *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964). This Court would be obligated to apply the law of the transferor jurisdiction[6] regardless of which party moved for transfer. *Ferens v. John Deere Co.*, 494 U.S. 516, 531, 110 S.Ct. 1274, 1284, 108 L.Ed.2d 443 (1990).

A number of courts have applied the rule for diversity actions to cases involving the transfer of federal claims. *See, e.g., In re Rospatch Secur. Litigation*, 760 F.Supp. 1239, 1256–57 (W.D.Mich.1991).[7] That approach has been sharply criticized, however. Marcus, *Conflict Among Circuits and Transfers Within the Federal Judicial System*, 93 Yale L.J. 677, 719–21 (1984). Professor Marcus contends that the principles upon which *Van Dusen* is based—rooted as they are in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)—are not germane to transfers of federal claims. Marcus, *supra*, 93 Yale L.J. at 692–701. He argues that no litigant has a right to a particular interpretation of federal law, *id.* at 706 (citing *H.L. Green Co. v. MacMahon*, 312 F.2d 650, 652 (2d Cir.1962)), and that each federal court is competent to decide questions of law arising from federal claims. Marcus, *supra*, 93 Yale L.J. at 702–09.[8]

Relying on that critique, the District of Columbia Circuit Court ruled that while a transferee court should strive to avoid conflicts, it is not required to defer to

---

**4.** The defendants argue that § 27A applies only to those claims which were timely under the statute of limitations in effect in the jurisdiction in which the claims were filed. That interpretation finds little support in the text, however. Instead, it is clear that § 27A selects a point in time—June 19, 1991—as the pivot upon which the choice of law turns. It follows that the "jurisdiction" to which § 27A(b)(2) refers is the one in which the claims were pending on June 19, 1991. Because the meaning of the statute is plain, it is unnecessary to inquire into its legislative history. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

**5.** The Court is mindful that § 27A was enacted to protect those who relied upon a statute of limitations which was subsequently overturned by *Lampf*. 137 CONG.REC. S18624 (daily ed. Nov. 27, 1991) (statement of Sen. Bryan). In drafting the statute, however, Congress did not choose to condition reinstatement upon a showing of "reliance." Consequently, there is no reason to believe Congress intended to limit

reinstatement to those cases in which plaintiffs can demonstrate reliance upon the statute of limitations which existed in the jurisdiction in which the claims were filed.

**6.** In *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1390–92 (7th Cir.1990), the Seventh Circuit correctly anticipated *Lampf* by holding that § 10(b) claims had to be commenced within one year of discovery—but in any event, no later than three years after the violation. Consequently, by the time the plaintiffs' filed their § 10(b) claims in the Northern District of Illinois, the statute of limitations applicable in that jurisdiction had expired.

**7.** Other cases are collected in Marcus, *Conflict Among Circuits and Transfers Within the Federal Judicial System*, 93 Yale L.J. 677, 692 n. 100.

**8.** Professor Marcus wrote prior to *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 1284, 108 L.Ed.2d 443 (1990), a case in which the Supreme Court clarified its *Van Dusen* decision. 494 U.S. at 523–31, 110 S.Ct. at 1280–84.

the interpretation of federal law followed in the transferor jurisdiction. *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1174–76 (D.C.Cir.1987) (hereinafter *"Korean Air Lines"*),[9] *aff'd on other grounds sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). Since then, the rule of "independent judgment" has been applied in a variety of contexts. *See, e.g., In re Pan American Corp.*, 950 F.2d 839, 847 (2d Cir.1991) (28 U.S.C. § 157(b)(5)); *In re Litigation Involving Alleged Loss of Cargo*, 772 F.Supp. 707, 711 (D. Puerto Rico 1991) (28 U.S.C. § 1407); *Isaac v. Life Investors Ins. Co.*, 749 F.Supp. 855, 863 (E.D.Tenn. 1990) (28 U.S.C. § 1404(a)); *Eckstein v. Balcor Film Investors*, 740 F.Supp. 572, 574 (E.D.Wis.1990) (§ 1407); *In re Air Crash Disaster at Stapleton Intern. Airport*, 720 F.Supp. 1493, 1496 (D.Colo.1989) (§ 1407); *Fossett Corp. v. Gearhart*, 694 F.Supp. 1325, 1328 (N.D.Ill.1988) (§ 1404(a)). Under the circumstances, it seems likely the Ninth Circuit will find *Korean Air Lines* persuasive and hold that this jurisdiction is not bound by the transferor circuit's precedent.[10]

■ As of June 19, 1991, it was well established in the Ninth Circuit that the statute of limitations for a § 10(b) claim should be borrowed from state law. *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1411–12 (9th Cir.1987). For a claim arising in Washington, the Ninth Circuit had adopted the three year statute of limitations established by RCW 4.16.080(4).

*Reeves v. Teuscher*, 881 F.2d 1495, 1500 (9th Cir.1989). However, the Circuit had held that the statute is not triggered until the person defrauded has "actual or inquiry notice of a fraudulent misrepresentation." *Id.* at 1500–01 (citing *Volk*, 816 F.2d at 1412). It had ruled that the trier of fact should determine whether the plaintiff knew or should have known of a cause of action. *Reeves*, 881 F.2d at 1501 (citing *Volk*, 816 F.2d at 1417).

■ Here, the plaintiffs alleged fraudulent concealment. (First Amended Complaint (Ct. Rec. 10), at 21–22.) Under precedent which existed on June 19, 1991, such allegations appear to create a question of fact for the jury. *Reeves*, 881 F.2d at 1501 (citing *Volk*, 816 F.2d at 1417). Thus, the plaintiffs' § 10(b) claims were timely.

## C.  CONSTITUTIONALITY

Having determine that the plaintiffs are entitled to reinstatement under § 27A, the Court must address the constitutional questions raised by the defendants.

### 1.  Article III

■ Section 27A incorporates the specific limitations periods which the various circuits had established prior to June 19, 1991. (Consequently, the defendants' assertion that *Lampf* "declared" pre-existing law is beside the point.) By doing so, § 27A creates a new statute of limitations for each claim covered by its terms.[11] Because

---

9. *Korean Air Lines* concerned the proper construction of 28 U.S.C. § 1407. In his concurring opinion, Judge D.H. Ginsburg went to great lengths to demonstrate that the exercise of "independent judgment" best serves the purposes for which that statute was enacted. 829 F.2d at 1176–84.

10. Ultimately, the interpretation of § 1404(a) is a matter of statutory construction. *See* Marcus, *supra*, 93 Yale L.J. at 709. In that regard, *Ferens v. John Deere Co., supra*, is the Supreme Court's most recent pronouncement on the subject of § 1404(a) transfers. In *Ferens*, the Supreme Court reiterated that "the decision to transfer venue under § 1404(a) should turn on considerations of convenience rather than on the possibility of prejudice resulting from a change in the applicable law." 494 U.S. at 528, 110 S.Ct. at 1282. The Court expressed concern

that a potential change of law could complicate the decision-making process, thereby defeating the purpose of the statute. *Id.* Finally, the Court said, "Foresight and judicial economy now seem to favor the simple rule that the law does not change following a transfer of venue under § 1404(a)." 494 U.S. at 530, 110 S.Ct. at 1283. Although *Ferens* is a diversity case, the policy considerations which led to a rule favoring judicial economy are not necessarily limited to that context.

11. Congress could have accomplished the same result by listing the limitations periods which existed prior to *Lampf*. To do so, however, Congress would have had to conduct a circuit-by-circuit review of pre-existing law. Instead, Congress chose to incorporate by reference. By using that mechanism, Congress was able to

§ 27A adopts new limitations periods for otherwise time-barred claims, it amends existing law. As a result, no issue is raised under Article III. *See Robertson v. Seattle Audubon Soc.*, —— U.S. ——, ——, 112 S.Ct. 1407, 1414, 118 L.Ed.2d 73 (1992).

### 2. Equal Protection/Due Process

■ Section 27A does not burden fundamental constitutional rights, nor does it create suspect classifications. Hence, review is limited to the following inquiry: Is § 27A rationally related to some legitimate governmental interest? *See Lyng v. International Union, UAW*, 485 U.S. 360, 370, 108 S.Ct. 1184, 1192, 99 L.Ed.2d 380 (1988); *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 172, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980).

Congress enacted § 27A to protect those plaintiffs who filed § 10(b) claims prior to *Lampf* in reliance upon limitations periods then in existence. 137 CONG.REC. S18623–24 (daily ed. Nov. 27, 1991) (statement of Sen. Bryan). Whether such persons are entitled to restoration of a "remedy lost through mere lapse of time," *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 316, 65 S.Ct. 1137, 1143, 89 L.Ed. 1628 (1945), is clearly a matter of legitimate Congressional interest. *See International Union of Elec. Wkrs. v. Robbins & Myers, Inc.*, 429 U.S. 229, 243–44, 97 S.Ct. 441, 450, 50 L.Ed.2d 427 (1976) (holding that Congress has authority to revive a cause of action which is time-barred "by the running of a limitations period").[12] Accordingly, § 27A is valid unless it is "patently arbitrary or irrational." *Fritz*, 449 U.S. at 177, 101 S.Ct. at 460.

The defendants object to the fact that imposition of liability under § 10(b) may depend upon the jurisdiction in which the claim was pending on June 19, 1991, and whether it was filed before or after *Lampf.* This, they complain, will result in different treatment for similarly situated litigants.

It is true that § 27A creates two classifications—one geographic, the other temporal. However, the creation of such distinctions is an unavoidable aspect of the legislative process. *Lyng*, 485 U.S. at 370, 108 S.Ct. at 1192. More importantly, each distinction made by § 27A serves a rational purpose.

Prior to *Lampf*, the circuits were divided. *Compare Volk v. D.A. Davidson & Co.*, 816 F.2d at 1411–12 (in the Ninth Circuit, limitations period borrowed from state law) *and Short v. Belleville Shoe Mfg. Co.*, 908 at 1390–92 (in the Seventh Circuit, uniform period to be applied). The geographical distinctions implicit in § 27A are an inescapable consequence of that fact. After *Lampf*, a person contemplating a § 10(b) action has notice of the new statute of limitations. Thus, there is no "reliance" interest to be protected.

Since § 27A is neither arbitrary nor irrational, it does not offend the Fifth Amendment. *See Fritz*, 449 U.S. at 172 n. 8, 101 S.Ct. at 458 n. 8 (citing *Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971), for the proposition that "a federal statute which is valid under the equal protection component of the Fifth Amendment ... is perforce valid under the Due Process Clause of that amendment").

### 3. Bill of Attainder

Finally, it is clear that § 27A does not constitute a Bill of Attainder. It neither singles out the defendants, nor does it impose a "punishment." *See Nixon v. Administrator of General Services*, 433 U.S. 425, 469–484, 97 S.Ct. 2777, 2803–2811, 53 L.Ed.2d 867 (1977).

### D. CONCLUSION

The plaintiffs have satisfied all four conditions necessary for reinstatement. Since § 27A is not unconstitutional, the plaintiffs motion to reinstate must be granted.

---

achieve its primary objective, while at the same time avoiding the task of determining the precise contours of pre-*Lampf* law.

**12.** In *Lampf*, Justice Blackmun said, "[W]e are faced with the awkward task of discerning the limitations period that Congress intended courts

to apply to a cause of action it really never knew existed." 111 S.Ct. at 2789. Now that Congress has spoken, its determination is entitled to great deference. *Lyng*, 485 U.S. at 370, 108 S.Ct. at 1192.

IT IS HEREBY ORDERED:

Plaintiffs' Motion to Reinstate § 10(b) Claims (Ct.Rec. 63) is granted.

IT IS SO ORDERED.